UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LINDA A WOZNICKI,

        Plaintiff,

   v.                                     Case No. 20-cv-1246-bhl

AURORA HEALTH CARE INC,
THE BOARD OF DIRECTORS OF AURORA
HEALTH CARE INC,

        Defendants.

---

### ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

---

       In this case, Plaintiff Linda A. Woznicki, a participant in Aurora Health Care, Inc.'s defined contribution plan, claims that Aurora, the Board of Directors of Aurora, and dozens of unnamed defendants breached their fiduciary duties to plan participants when they allowed those participants to suffer exorbitant recordkeeping, managed account service, and investment management fees. Her class action complaint alleges violations of the Employee Retirement Income Security Act of 1974 (ERISA) on behalf of herself and thousands of former and current plan participants. Defendants have moved to dismiss for failure to state a claim. Because Woznicki has plausibly alleged breaches of the duty of prudence and duty to monitor other fiduciaries, Defendants' motion will be denied with respect to those claims. The motion will be granted with respect to Woznicki's claims for breaches of the duty of loyalty and the duty to disclose.

### FACTUAL BACKGROUND[1]

       From June 2012 until July 31, 2020, Plaintiff Linda A. Woznicki worked for Aurora Health Care, Inc. as a project manager. (ECF No. 19 ¶¶11-12.) As an Aurora employee, Woznicki was one of over 36,000 participants in Aurora's Internal Revenue Code Section 403(b) defined

---

[1] Allegations are drawn from the amended complaint, (ECF No. 19), and the Court accepts them as true at the motion to dismiss stage. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

contribution retirement plan (the Aurora Plan), which managed over $3.5 billion in assets. (ECF No. 19 ¶¶11, 27; ECF No. 23 at 9.) This kind of plan is underwritten by participants' voluntary contributions, which are then matched by the employer and invested in various funds, where, ideally, they accrue over time. (ECF No. 23 at 10.) To effectuate smooth administration, defined contribution retirement plans rely on third-party service providers often called "recordkeepers." (ECF No. 19 ¶¶36-37.) In this case, from 2014 to 2019, Transamerica Retirement Solutions served as the Aurora Plan's recordkeeper and provided recordkeeping and related administrative (RK&A) services as well as certain investment-related services. (ECF No. 19 ¶36; ECF No. 23 at 12.) In exchange for these services, participants paid a graduated flat annual RK&A fee of $10, $30, or $65 based on their account balances. (ECF No. 23 at 12.)

Defined contribution retirement plans generally offer participants a menu of investment options. (ECF No. 19 ¶¶81-83.) During the relevant class period, the Aurora Plan's investment options included a mix of 30 mutual funds, dozens of annuity contracts, and self-directed brokerage accounts. (ECF No. 23 at 13.) The selected share classes within the mutual funds had expense ratios ranging from .02% to 1.25%. (*Id.*)

The Aurora Plan also offered managed account services through Portfolio Xpress, Managed Account (2014-2017), and Managed Advice (2017-2019). (*Id.*) All three were elective, individual services that charged a fee to invest participants' account balances into a portfolio of preselected investment options. (ECF No. 19 ¶63.) Portfolio express charged a .03% fee, Managed Advice charged a .25% fee, and Managed Account charged either an unknown or no fee. (*Id.* ¶¶229-230, 232, 233.)

In 2020, Aurora merged with Advocate Health Care Network to form Advocate Aurora Health. (ECF No. 23 at 11.) Following this, Empower Retirement replaced Transamerica as recordkeeper of the now-consolidated plans. (*Id.* at 12.)

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint will survive if it "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Importantly, in ERISA cases, a plaintiff "does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story." *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 678 (7th Cir. 2016).

## ANALYSIS

Woznicki alleges violations of the ERISA fiduciary duties of prudence and loyalty and duties to monitor and disclose. (ECF No. 19 ¶¶279-337.) At this stage, the dispute mainly centers on the duty of prudence claim. Woznicki argues that Defendants breached that duty when they failed to offer participants the best share classes in the Aurora Plan's mutual funds and looked the other way as participants paid excessive RK&A and managed account service fees. (*Id.* ¶¶279-316.) While the parties treated each of these sets of allegations as standalone claims for breach of the duty of prudence, the real question at this stage is whether the cumulative weight of the allegations plausibly alleges imprudence. Because the complaint, taken as a whole, sufficiently supports a plausible lack of prudence, Defendants' motion to dismiss will be denied as to that claim. The failure to monitor claim will also survive, while the duty of loyalty and failure to disclose claims will be dismissed.

**I.   Woznicki Has Stated a Claim for Breach of the Duty of Prudence.**

"In order to state a claim for breach of fiduciary duty under ERISA, the plaintiff must plead '(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff.'" *Allen*, 835 F.3d at 678 (quoting *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010)). In this case, neither side disputes that Defendants are plan fiduciaries, so to survive the motion to dismiss, Woznicki need only satisfy the second and third elements.

In so many words, ERISA circularly characterizes the duty of prudence as a requirement to act with the prudence that a prudent person would use under the circumstances. *See* 29 U.S.C. §1104(a)(1). Prudence is therefore a rather abstract and relative concept, so pleading imprudence is not as simple as reciting a recipe and identifying the missing ingredients. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). It may be prudent to accept a ride home from a friend. Not so much if you know the friend has just left a bar after draining his fifth martini. Similarly, whether a fiduciary has acted prudently is a fact-sensitive, context-dependent inquiry. *See Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 680 (7th Cir. 2014). Here, Woznicki has offered

three primary reasons to conclude that Defendants did not meet their statutory duty. Her complaint includes a chart purporting to show that Aurora Plan participants paid a much higher average RK&A fee than participants in similar plans (ECF No. 19 ¶119); she identifies cheaper alternative share classes within mutual funds (*Id.* ¶198); and she tries to explain why the managed account services the Aurora Plan offered were no better than readily available, free options. (*Id.* ¶¶240-241.) Defendants suggest that these allegations, properly sorted, amount to a weak hunch. Their arguments, while valid in part, are ultimately unavailing, at least at the motion-to-dismiss stage.

From the outset, Defendants hitched much of their case to the wrong wagon. They contended that, under *Divane v. Northwestern Univ.*, 953 F.3d 980 (7th Cir. 2020), a plan that features a diverse menu of investment options necessarily reflects a prudent process. (*See* ECF No. 23 at 28-30.) But while Defendants' motion to dismiss was pending, the United States Supreme Court vacated the Seventh Circuit's judgment in *Divane* and remanded the case for further proceedings. *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2022). The Supreme Court held that the Seventh Circuit had focused on the breadth of the plan's investment options to the exclusion of the "'continuing duty . . . to monitor.'" *Id.* at 471 (quoting *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015)). The Court emphasized that "'a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones.'" *Id.* (quoting *Tibble*, 575 U.S. at 530). In other words, a plan fiduciary is not off the hook just because it offers participants many doors and a hungry lion waits behind only one.

But Defendants did not push all-in on *Divane*. They also question, for example, the integrity of Woznicki's chart comparing the RK&A fees various plans' participants paid. (ECF No. 23 at 17-21.) Normally, given the trajectory of inferences at the pleading stage, the Court would accept a plaintiff's back-of-the-napkin math as good enough. *See Twombly*, 550 U.S. at 556 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable"). Deference to an approximation is inappropriate, though, when, as here, the calculations are facially and demonstrably wrong. The chart at issue states that Aurora Plan participants paid average annual RK&A fees of $79. (ECF No. 19 ¶119.) Yet Transamerica charged only $65 per year per participant at the very most. (ECF No. 23 at 12.) So how did Woznicki arrive at an average fee higher than any of the individual charges? The answer lies in where she found her dividend. She took the "direct compensation" listed on the various plans' publicly available Form 5500s and divided it by the number of participants in each plan. (ECF

No. 25 at 16 n.15.) The problem is that "direct compensation" includes fees other than recordkeeping, so using it as the dividend artificially inflates the recordkeeping fee. What's worse is that Woznicki excluded "indirect compensation" from her calculations altogether, and "indirect compensation" includes fees related to recordkeeping services. U.S. DEP'T OF LAB., EMP. BENEFITS SEC. ADMIN., INSTRUCTIONS FOR FORM 5500 (2021). So her RK&A averages both include fees unrelated to recordkeeping and administration and exclude recordkeeping fees paid via indirect compensation. This would be like calculating a baseball player's batting average by dividing his total plate appearances, including walks, by his total number of base hits, but excluding doubles. The result becomes wrong twice over. Woznicki asks the Court to forgive any mathematical errors because those errors are uniform across the chart. But this misses the point. The same errors occurred in every calculation, but the impact of those errors was not uniform. Let's return to the baseball example. Imagine two players, both with 90 total at-bats and 30 total base hits. Player A has walked 10 times and hit 10 doubles. Player B has walked 0 times and hit 0 doubles. Appropriately calculated, their batting averages are the same: .333. But if we include walks as at-bats and exclude doubles, Player A's average falls to .200, while Player B's average remains .333. The same errors were made, but in one instance, those errors had an outsized effect on the results. Had Woznicki used her flawed formula to calculate the average RK&A fee paid by participants in all, roughly, 63,000 comparable defined contribution plans on the market, a serious outlier might at least raise suspicions. But she compared only 22 plans. To be clear, the Court is not suggesting that Woznicki needed to run 63,000 simulations just to state a claim, but she cannot both arbitrarily limit the universe of comparator plans and botch the math as applied to those plans. At the motion to dismiss stage, courts draw all reasonable inferences in the plaintiff's favor. *See Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). But because of its serious defects, the chart here permits no reasonable inferences, so it does nothing to plausibly allege an ERISA violation.

       Defendants also dispute Woznicki's claim that they did not regularly solicit quotes or competitive bids from alternative recordkeepers during the relevant class period as a prudent fiduciary would have. Woznicki's suggestion is that Defendants' 2020 decision to replace Transamerica with Empower, which charged a substantially lower RK&A fee, implies a previously imprudent process because Empower and other lower-cost recordkeepers were on the market long before 2020. (ECF No. 19 ¶¶137-142.) But as Defendants note, Empower only took over

recordkeeping duties after Aurora and Advocate merged to form Advocate Aurora Health and combined their plans, doubling the number of participants. (ECF No. 23 at 20.) According to Woznicki's own logic, an increase in plan participants should lead to a decrease in individual RK&A fees. (ECF No. 19 ¶43.) It is therefore disingenuous to compare the RK&A fees Advocate Aurora Health plan participants paid with those paid by the significantly smaller number of participants in the original Aurora Plan. The Court is mindful of the fact that ERISA plaintiffs are seldom flies on the walls of the boardrooms where plan fiduciaries operate. Particularly at the pleading stage, they are permitted to connect the dots with the kind of circumstantial evidence that would flop after discovery. *See Allen*, 835 F.3d at 678. In this instance, though, Woznicki's own well-pleaded facts undercut her allegations. These dots simply do not cohere.

Defendants next argue that Woznicki lacks standing to challenge the Managed Account or Managed Advice service fees because she used only Portfolio Xpress. (ECF No. 23 at 22.) The Supreme Court recently held that "[t]here is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020). Therefore, an ERISA plaintiff, even one seeking to represent a class, must demonstrate Article III standing before her claims can proceed. Relying on *Thole*, Defendants contend that it is impossible for Woznicki to satisfy Article III's standing requirements with respect to services she never used. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (holding that an Article III plaintiff must show an actual or imminent injury in fact). They highlight that *Thole* rejected the very trust-based theory of standing on which Woznicki relies. *Thole*, 140 S. Ct. at 1619 (holding that the ERISA plaintiffs could not demonstrate standing on the trust-based theory that "injuries to the plan are by definition injuries to the plan participants"). But *Thole* involved a defined *benefit* retirement plan, not a defined contribution plan. The difference is significant. As the name implies, in a defined benefit plan, a participant's benefits are fixed. *See Thole*, 140 S. Ct. at 1618. In other words, the plan is on the hook for a sum certain, and there is no injury to participants unless the fiduciary fails to pay out that sum certain, regardless of the means employed to do so. Conversely, in a defined contribution plan, the money a participant and her employer contribute is fixed, but the participant's return on investment depends upon the market performance of that contribution. *Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185, 1195 (D. Col. 2021). It follows that there is a necessarily causal relationship between the prudence with which the plan is managed and the corresponding payout participants receive. Like a private trust, "the ultimate amount of money received by the beneficiaries [in a defined

contribution plan] will typically depend on how well the [plan] is managed, so every penny of gain or loss is at the beneficiaries' risk." *Thole*, 140 S. Ct. at 1619. Thus, the trust-based theory of standing the Supreme Court rejected in *Thole* is applicable in this case because, as with trusts, the ultimate value the beneficiaries of a defined contribution plan receive depends on how well the plan is managed. *See Kurtz*, 511 F. Supp. 3d at 1194. In *Kurtz*, the Court found standing to sue where the plaintiff had invested in five out of the plan's 15 options. *Id.* And Plaintiff here has an even stronger argument for standing. Not only did she use managed account services in the same proportion as the *Kurtz* plaintiff's investments (one out of three), her case does not hinge solely on the imprudence of those managed account services. As the Court mentioned earlier, the parties treated each allegation of imprudence as a separate claim for breach of fiduciary duty. But this case is about whether Defendants breached their fiduciary duty of prudence by mismanaging the Aurora Plan as a whole. The various allegations of mismanagement, *i.e.*, excessive recordkeeping fees, are puzzle pieces. They are not meant to paint a full picture in isolation. It makes no sense to argue that a plaintiff lacks standing to introduce a piece of evidence that supports her overarching claim. Put another way, Plaintiff's claim is that a building collapsed on her. She is not barred from introducing evidence of a faulty column that contributed to the collapse just because it was the bathtub that ultimately landed on her. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) ("a violation of [29 U.S.C. §1109(a)] inures to the benefit of the plan as a whole").

Even if she has standing, though, Defendants contend that Woznicki's allegations regarding the managed account services are merely labels and conclusions. The Court disagrees. The complaint asserts that there was no material difference between Portfolio Xpress and Managed Advice, yet Managed Advice charged participant's over eight times more in service fees. (ECF No. 19 ¶¶232-234.) The complaint also alleges that none of the managed account services performed better than ubiquitously available, free alternatives. (*Id.* ¶¶237-241.) These allegations support a reasonable inference that Defendants breached their fiduciary duty by permitting Aurora Plan participants to pay for services that could have been offered for free.

Moving on to allegations regarding share classes, Defendants argue that the Seventh Circuit has rejected Woznicki's claim that "[t]he share class that provides the greatest benefit to plan participants is the share class that gives plan participants access to the portfolio managers at the lowest net fee for the services of the portfolio manager." (*Id.* ¶157.) Specifically, Defendants cite

*Leimkuehler v. American United Life Ins. Co.*, 713 F.3d 905, 912 (7th Cir. 2013), for the proposition that "some share classes are more expensive than others, but the cheapest option may not inevitably be the best option." But that part of the opinion was about whether the defendant qualified as a fiduciary under ERISA at all, not whether it had breached a fiduciary duty. *Id.* Defendants do not challenge their status as fiduciaries, so *Leimkuehler* is irrelevant. And even granting that the cheapest share class within a mutual fund may not inevitably be the best option, Woznicki's case is not about selecting share classes in the abstract. Her contention is that Defendants selected more expensive share classes that offered no material benefit over their cheaper counterparts. (ECF No. 19 ¶¶155, 163.) Defendants' real quibble is again mathematic. The complaint calculates the net investment expense of a share class by deducting revenue sharing credits from expense ratios. (*Id.* ¶163.) During the relevant class period, Defendants always selected the share classes with the lowest expense ratios, but those classes did not necessarily have the lowest net investment expenses when accounting for revenue sharing. The question is whether a prudent fiduciary would have considered revenue sharing when choosing among share classes. Defendants argue that their choices cannot be imprudent because "[a]ll six funds that Plaintiff complains about were institutional-class shares (I or R classes)—the exact share class that plan participants typically want." (ECF No. 23 at 25.) But "typical" is not the same as "prudent." Consider an analogy. A customer goes to the grocery store and buys a pint of Blue Bunny ice cream because it is typically slightly cheaper than a pint of Ben and Jerry's. This is not a prudent purchase if, for instance, the pint of Ben and Jerry's was marked down 75%. Woznicki's grievance is essentially that Defendants considered only a share class's sticker price and ignored all relevant discounts. On the current record, there are sufficient allegations to plausibly suggest that this reflects an imprudent process.

Defendants' final argument is that even if they sometimes failed to select the cheapest share class in a fund, they modified their investment menu enough to infer a prudent process. Indeed, during the relevant class period, the Aurora Plan featured 30 different mutual funds, with about 12 offered at any given time. (ECF No. 23 at 31.) And only one fund was offered for the entire six-year period. (*Id.*) The flaw in this reasoning, however, is that adjustments do not necessarily indicate prudence. If a building manager has a duty to offer healthy options in his vending machines, he does not satisfy that duty simply by regularly swapping out Snickers bars for Twinkies. Defendants' duty implicated the financial integrity of their choices, not the frequency.

The turnover rate of the Aurora Plan's mutual funds is thus no absolute defense at the motion to dismiss stage.

Considering the totality of the competent evidence Woznicki has offered, and drawing all reasonable inferences in her favor, the Court finds that she has plausibly alleged a breach of the fiduciary duty of prudence. Defendants' motion to dismiss that claim must therefore be denied.

**II.    Woznicki Has Stated a Claim for Breach of the Duty to Monitor Other Fiduciaries.**

The parties agree that Woznicki's failure to monitor claims are derivative of her breach of fiduciary duty claims. Because her breach of the duty of prudence claim survives, so too must her claim that Defendants breached their duty to monitor other fiduciaries. *See In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 953, 968 (E.D. Wis. 2009).

**III.    Woznicki Has Not Stated a Breach of Duty of Loyalty Claim.**

Woznicki's complaint treats prudence and loyalty as coextensive duties. In the Seventh Circuit, though, a plaintiff only states a claim for breach of the duty of loyalty if she includes allegations of self-dealing. *See Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 WL 3578022, at *6 (N.D. Ill. July 1, 2020); *Daugherty v. Univ. of Chicago*, No. 17-C-3736, 2017 WL 4227942, at *9 (N.D. Ill. Sept. 22, 2017). Plaintiff's complaint contains no such allegations, so her claim for breach of the duty of loyalty must be dismissed.

**IV.    Woznicki Has Not Stated a Claim for Breach of the Duty to Disclose.**

Woznicki alleges that Defendants' failure to disclose revenue sharing rates and managed account service fees prevented Aurora Plan participants from making sound and informed investment decisions. (ECF No. 19 ¶¶225, 264-265.) 29 C.F.R. Section 2550.404a-5 requires plan fiduciaries to make certain public disclosures. The fiduciary satisfies this requirement if it complies with either Section 2550.404a-5(a) or Sections 2550.404a-5(c)-(d). *See* 29 C.F.R. §2550.404a-5(b). Woznicki does not dispute that Defendants' disclosures complied with Sections 2550.404a-5(c)-(d). (ECF No. 27 at 17.) She merely claims a violation of paragraph (a). But a fiduciary who complies with paragraphs (c) and (d) cannot violate paragraph (a), so Woznicki has no claim here.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss, ECF No. 22, is **GRANTED in part and DENIED in part**. The motion is granted with respect to the breach of

the duty of loyalty and failure to disclose claims. The motion is denied with respect to the breach of the duty of prudence and failure to monitor claims.

Dated at Milwaukee, Wisconsin on May 27, 2022.

                                                            s/ *Brett H. Ludwig*
                                                             BRETT H. LUDWIG
                                                             United States District Judge